## FRANK McCARTY v. STATE.

No. A-1856. Opinion Filed December 20, 1913.

(136 Pac. 1102.)

1. **CONTINUANCE—Refusal of Continuance—Absent Witnesses.** In reviewing the refusal of a continuance asked on account of an absent witness, the evidence adduced at the trial will be considered by this court for the purpose of determining whether the alleged testimony was probably true, and when it is not probable that the absent witness would swear to the facts stated in the defendant's affidavit, and where the record shows that the defendant was not put upon his trial until more than a year after the indictment was returned, there is no error in refusing a further continuance.

2. **RAPE—Sufficiency of Evidence.** In a prosecution for statutory rape, the evidence is held to sustain the verdict and that no reversible error was committed on the trial.

*Appeal from District Court, Bryan County;*
*A. H. Ferguson, Judge.*

Frank McCarty was convicted of statutory rape, and appeals. Affirmed.

*Utterback, Hayes & MacDonald,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Smith C. Matson,* Asst. Atty. Gen. (*Jos. L. Hull,* of counsel), for the State.

DOYLE, J. Plaintiff in error was tried and convicted in the district court of Bryan county, upon an indictment returned by the grand jury on the 20th day of April, 1911, wherein he was charged with the crime of statutory rape, alleged to have been committed March 15, 1910, upon the person of one Anna Wilkerson, an unmarried female, under the age of 18 years, and of previous chaste and virtuous character. On the 30th day of May, 1912, in accordance with the verdict of the jury, the court sentenced the defendant to imprisonment in the penitentiary for the term of five years. To reverse the judgment an appeal was taken by filing in this court on November 7, 1912, petition in error with case-made.

The prosecutrix testified: That she was 17 years old in March, 1910; had resided in Durant with her parents for eight years, and had been employed in the office of the Pioneer Telephone & Telegraph Company for about five years. That she first met the defendant at his home in 1904, and began keeping company with him in 1908. That in 1909 she went with him as often as once a week. That they became engaged in January, 1910, and were to be married the following fall. That he then went with her almost every night. That she would go off duty at 8 o'clock p. m., and he would come to the office for her and take her home. Sometimes they would go to a show, and they went driving several times. That they went driving on the night of the 15th day of March, 1910, and he succeeded in having sexual intercourse with her, which he afterwards repeated about a dozen times during the following three months, and as a result she became pregnant. That she informed him of her condition several times and asked him to make his promise good and marry her. That in August, 1910, she asked him, "What are you going to do?" and he told her: "I don't aim to do anything. You will never see me any more. I aim to leave on the Limited." That he left and stayed away a month, and

after his return he avoided her. Later he left Durant again. That she continued to work for the telephone company until the 6th day of March, which was the day prior to the birth of her child. That the defendant was the only man who ever had sexual intercourse with her, and they were not married.

Several witnesses, including the parents of the prosecutrix, testified that she was born at Whitewright, Tex., October 11, 1892.

The defense was that the prosecutrix was not of chaste and virtuous character previous to the commission of the offense charged. The defendant did not take the stand himself, and offered no testimony to · disprove any of the testimony of the prosecutrix concerning his conduct with her. The only testimony offered in support of his defense was an alleged deposition of one Pink Mullins, taken at Parsons, Kan. In rebuttal, the state called this witness, Pink Mullins, to the stand, and he testified that the deposition, in so far as it reflected upon the chaste character of the prosecutrix, was forged and false. He also testified that he never had sexual intercourse with the prosecutrix, and knew nothing which even tended to show she was not of previous chaste and virtuous character. He further testified that he came to Durant when the case was set for trial in January, and the defendant met him at the train and told him not to get off; that he would get the trial put off with him out of town; that he went on to Denison, Tex., and when he returned to Durant the defendant met him and gave him $20 and told him not to get off the train; that he went on to Parsons. Kan., where he resided at the time of the taking of his deposition.

Arthur Cranston, the notary before whom the deposition was taken, testified that the witness Pink Mullins gave the deposition as it was written.

The refusal of a continuance is assigned as error, and relied upon for a reversal of the judgment. The record shows that the defendant was arraigned on April 27, 1911. It appears to be incomplete as to the various times at which the case was set for trial, and the causes for continuance at such times. How-

ever, it appears that on January 2, 1912, the cause was reset for January 10th. On January 8th, the defendant applied for leave to take the deposition of one Pink Mullins. On January 10th, the case was continued on motion of the defendant. When the case was called for trial on May 22, 1912, the defendant filed his affidavit in support of another motion for continuance. His affidavit contained all the formal allegations required by law, and, among others, the following statement:

"That B. W. Williams of Hugo, Okla., is a witness properly and legally subpoenaed to appear in his behalf at the trial of this case; that the said B. W. Williams on the 21st day of May, A, D, 1912, which was yesterday, did not show up in Durant; and that one of the defendant's attorneys, to wit, W. E. Utterbuck, talked to the said B. W. Williams over the telephone, and he attached hereto the statement of the said W. E. Utterback as to the said conversation. He further states: That the said B. W. Williams did not reach Durant this morning, but that his said attorney received from the said B. W. Williams a certificate from Dr. Rutherford which is hereto attached as a part hereof and designated as 'Exhibit A.' That the said B. W. Williams is not absent by the procurement or connivance of this defendant, and is not absent with his consent. That the said B. W. Williams is a material witness in behalf of this defendant, and if present at the trial of this cause this defendant is informed and believes and alleges that the said B. W. Williams would testify as follows, to wit: He knows Anna Wilkerson, the prosecuting witness in this case, and has known her for nearly three years. That prior to the 15th day of March, 1910, the time this defendant is alleged to have had intercourse with Anna Wilkerson, he knows of his own personal knowledge that the said Anna Wilkerson was not a virtuous woman. That prior to said date he had gone buggy riding with her at night and had intercourse with her. That all of said testimony is material in behalf of this defendant. That this defendant knows of no other witness by whom he can prove these facts; and that he cannot safely go to trial without the attendance of the said B. W. Williams."

An affidavit of W. E. Utterback, Esq., one of the defendant's attorneys, stated that he had talked to B. W. Williams, the day before, over the telephone, and Williams had told him

that he could not afford to make a trip to Durant in his present condition.

The affidavit of Dr. B. C. Rutherford was also filed, wherein it is stated:

"This is to certify that Mr. B. W. Williams is suffering from traumatism of a large gland. Also inflammation of another large gland, and should be make a trip to Durant at present and miss his treatment, which would also aggravate the inflammation. I feel sure he would have to undergo a painful and dangerous operation."

The order of the court overruling a motion for continuance is as follows:

"Now on this 22d day of May, 1912, comes the defendant herein and files his motion for a continuance, said continuance being asked for the reason that a witness B. W. Williams, who resides at Hugo, Okla., and who, it is alleged, is a material witness, is sick and unable to be in attendance on the court; the motion being supported by an affidavit of Dr. Rutherford to the effect that the witness is affected with the swelling of some gland. After the presentation of the motion, the court personally made an investigation of the matter and found that the said witness, B. W. Williams, on the day the motion was filed and presented left the town of Hugo, Okla., his home, on the train and came west toward Durant to the town of Soper, a distance of eleven miles, where he remained until noon, returning to Hugo at that time. That he was on the streets of Hugo continually that day after his return, and that apparently there was nothing to prevent him from being in attendance on this court. That the defendant or his attorneys knew nothing of such investigation and were not advised of the same at the time said motion was presented or overruled. Because of the facts as found to exist by the court as above stated, and because of the indefinite and unsatisfactory nature of the affidavit of the doctor, supporting the motion for a continuance, and because of the fact that this case has heretofore been continued twice upon the application of the defendant because of absent witnesses, the motion is by the court overruled, to which order of the court the defendant duly excepted; whereupon the hearing of the case is postponed until May 23, 1912. And on this May 23, 1912, the motion filed on the 22d day of May, 1912, is renewed by the defendant on the same grounds and supported by the same affidavit. The motion is again overruled, and the

cause directed to proceed to trial. To which ruling of the court the defendant duly excepts."

The record further shows that, when the motion for continuance was overruled on May 22d, "the defendant asks that an attachment be issued for B. W. Williams; request granted."

The trial began the following day and continued until May 24th. The record shows nothing further, however, with reference to the attachment issued for the witness Williams.

It is the right of every defendant in a criminal case to have compulsory process to compel the attendance of his witnesses, and that involves, as a matter of course, the time reasonably necessary to enable a defendant to procure and produce all legal and competent evidence necessary in his defense. In reviewing the refusal of a continuance, on account of the absence of witnesses, the record will be examined, and the evidence adduced at the trial will be considered by this court for the purpose of determining whether the alleged testimony was probably true. *Tucker v. State,* 9 Okla. Cr. 587, 132 Pac. 825.

The record here shows that the indictment was returned on the 20th day of April, 1911, and the defendant was put upon trial May 23, 1912, more than thirteen months later. The testimony of the witness Mullins is that he came to Durant in January, and that he defendant induced him to leave, saying "that he would get the trial put off with him out of town," and it is undisputed that the lower court was imposed upon by the defendant in securing a continuance at that time.

Judging from the record, we do not believe that the witness Williams would have testified as it is alleged that he would. No affidavit of Williams was presented with the motion for continuance, nor in support of the motion for new trial. If said witness had been present and testified to the facts stated, we think the jury would not have given credence to such a story in the face of the evidence adduced. It is our opinion that the court did not err in overruling the application for a continuance.

The contention of the defendant's counsel that the verdict is not sustained by the evidence is without merit. A case sel-

dom appears in criminal annals showing more depravity in the defendant, or a greater outrage to common decency and public morals. There appears in the record no error prejudicial to any substantial right of the defendant.

The judgment of conviction is affirmed.

ARMSTRONG, P. J., and FURMAN, J., concur.